IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT NOVEMBER TERM, 1851.

---

### THE OVERSEERS OF PRINCETON v. THE OVERSEERS OF SOUTH BRUNSWICK.

1. The proceedings of justices in making an order of removal must be strictly according to the statute; and every thing necessary to give jurisdiction must not only be done, but must appear on the face of the order; and the defect cannot be supplied by proof on the appeal or on the *certiorari*.

2. Defects in form in an order of removal may be amended, but not defects in substance. The omitting to state any matter necessary to give jurisdiction, it is well settled is matter of substance, and not amendable.

3. An order of removal can be made by two justices only, upon application of the proper overseer of the poor; and that it was made upon such application, must appear upon the face of the order.

4. In an order for the removal of a pauper under the 27th section of the act of 1846, it is necessary that it should appear on the face of the order that application for relief had been made to the overseers, by or on behalf of such pauper.

5. Since the act of 1846, "for the settlement and relief of the poor," there can be no removal of a pauper only likely to become chargeable to his place of legal settlement, but only to such place where he has resided for six months previous to such order. *Quere*, whether this authority, given in the 17th section, is not confined to cases where the pauper has no legal settlement within the state.

---

Two cases between the same parties, on two different orders, were removed by *certiorari* to Mercer sessions. An order of removal, in each case, was made by the justices below,

by which the paupers were removed from Princeton, in the county of Mercer, to South Brunswick, in the county of Middlesex. On the appeal, the court was moved to quash both orders, among other reasons, because—1. It did not appear on the face of the orders that there had been any application or complaint made by the overseers of the poor of Princeton to the justices of the peace, by whom the orders, respectively, are made. 2. It did not appear that there was any adjudication that the paupers were either chargeable, or likely to become chargeable, to the township of Princeton. The order was in the following form :

State of New Jersey, Mercer county, ss.—John S. Leigh and Augustus L. Martin, two justices of the peace of the county of Mercer, to the constables of said county, and to all constables and overseers of the poor whom it may concern :

Whereas Jediah Spaling, a poor person within the township of Princeton, in the county aforesaid, being brought before us and examined on oath relating to his last place of legal settlement, we do adjudge the legal settlement of the said Jediah Spaling to be in the township of South Brunswick, in the county of Middlesex, and that public relief is necessary ; we do therefore command you to convey and deliver the said Jediah Spaling to one of the constables of the township of South Brunswick, in the county of Middlesex, together with this our order and a copy of the evidence on which our adjudication is founded, who is required to receive him, and him deliver, with this our order and the copy of evidence aforesaid, to the overseers of the poor of the said township of South Brunswick, in the county of Mercer, there to receive relief according to law. Given under our hands and seals, this 18th day of April, 1850.

Exceptions were also taken to the form and sufficiency of the examinations, which it is not necessary to state.

In one case the additional objection was made, that the order of removal was without seal.

On the other hand, it was offered to be proved by the counsel of the township of Princeton, who resisted the motion to quash, that complaint was made to the justices of the peace

by the overseers of the poor, and that the paupers were likely to become chargeable to the township. It was further insisted that the order in each case was amendable.

The court refused to admit the proof offered, and quashed both orders.

Argued before the CHIEF JUSTICE and Justice CARPENTER.

*Hageman*, for the township of Princeton. In regard to the first objection, the order follows the form given by Mr. Elmer. It does not appear necessary, under our act as it now stands, that the order should set out that complaint had been made by the overseers. But the order may have been made under the 27th section of the act for the relief of the poor (*Rev. Stat.* 890), and not under the 17th.

The adjudication, that the pauper *needed relief*, is sufficient to show the jurisdiction of the justices.

The second order was amendable in regard to the seals of justices. It purported to have been sealed by them.

*Schenck*, contra. The jurisdiction of the justices is limited, and must appear on the face of the proceedings. It depends upon an application by the overseers, in a case where the pauper is chargeable, or likely to become chargeable, to the township. *Rev. Stat.* 886, § 17. Justices cannot, on their own motion, relieve. The order is not amendable. 5 *Mod.* 149; 2 *Str.* 1158; *Andrews* 361; 2 *Salk.* 492; 2 *Penn.* 806; *Burr. Sett. Cas.* 15 and 23; *Ib.* 39; *Ib.* 139; *Ib.* 680; 8 *T. R.* 178; 1 *Sett. Cas.* 32, 233, 324, and 386; 2 *Ib.* 142; 3 *Pet.* 93; 16 *Wend.* 38; 3 *Burns' Just.* 434, 440.

The court will intend nothing but what appears on the face of the order. 5 *Mod.* 321; 3 *Ib.* 269; *Bur. Sett. Cas.* 23; 8 *T. R.* 178; *Sayer* 278; *Salk.* 475; *Andrews* 372; *Bur. Sett. Cas.* 139; 1 *Sett. Cas.* 233, 324; 2 *Ib.* 73, 69, 91, and 81.

There must be a distinct adjudication that the pauper is chargeable, or likely to become chargeable, and that to the township from which removed. A certificated person can only be removed when actually chargeable. 2 *Salk.* 491; *Ib.* 485; *Ib.* 530; *Burr. Sett. Cas.* 165; *Ib.* 392; 1 *Str.* 77; *Andrews*

239 ; 6 *Mod.* 88, 163 ; 1 *Sess. Cas.* 124 ; *Burr. Sett. Cas.* 43, 138, 165.

The orders were for removal into another county, and therefore under the 17th section of the poor law. The 27th section only applies to cases when the place of settlement is within the same county, and an order is made to remove the pauper to the county poorhouse. But both sections contemplate the action of the overseers, and so are the most approved forms. See *Ewing's N. J. Justice* 385 ; *Griff. Tr.* 340 ; *Conductor Generalis* 328 ; 3 *Burns' J.* 432 (11*th .ed.*)

Being a judicial order or warrant, it must be under seal. 2 *Hawk. P. C.* 85 (134, by Curwood).

*Hageman*, in reply. The authorities cited all refer to certificated paupers : and cited act of 1741, 1 *Neville* 256. The sessions should not have quashed, but decided on merits.

The CHIEF JUSTICE. The plaintiff in *certiorari* seeks to reverse an order of the Quarter Sessions of the county of Mercer, quashing an order made by two justices for the removal of Jediah Spaling, a pauper, from Princeton to South Brunswick. In support of the motion for reversal, it is insisted—1. That the order of removal was regular and valid. 2. That the irregularity of the order, if any existed, was a defect of form merely, not of substance, and ought to have been amended by the sessions. 3. That the sessions had no power to quash the order of removal, for any defect in the order, but were bound to try the cause anew upon its merits.

The legal principles by which the decision of this case must be governed have been too long and too firmly settled to admit, at this day, of doubt or controversy.

Two justices, in making an order for the removal of a pauper, or of a person likely to become chargeable, exercise a special statutory authority, which must be strictly pursued, or their acts are invalid. Every thing necessary to confer jurisdiction must not only be done, but must appear upon the face of the proceedings to have been done. There can be no intendment in support of their proceedings. The case must appear to have been within the scope of their authority, otherwise

their act will be deemed an usurpation of power, and their proceedings *coram non judice*. In such case there can be no trial upon the merits before the sessions. The order of the justices must be quashed. *Chittinston* v. *Penhurst*, 2 *Salk.* 473, 475; *S. C.* 5 *Mod.* 149; *Rex* v. *Dobbyn*, 2 *Salk.* 474; *Rex* v. *Stepney*, *Burr. Sett. Cas.* 23.

The principle is of universal application to all tribunals exercising a special statutory authority. The legal presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction,) but that a cause is without its jurisdiction till the contrary appears. *State* v. *Scott*, 4 *Halst.* 20; *Vannuis* v. *McCollister, Penn.* 805; *Hoose* v. *Sherril*, 16 *Wend.* 38; *Rex* v. *Liverpool*, 4 *Burr.* 2244; *Turner* v. *Bank of North America*, 4 *Dall.* 8.

If the defect in the order of removal be a defect in form merely, it may, by the express provision of the statute, (*Rev. Stat.* 888, § 21) be amended by the sessions. But a defect in substance cannot be amended. What constitutes a defect in substance, has in some cases been a matter of doubt. But it is well settled, that an omission to state upon the face of the order any of the essential elements of the jurisdiction of the tribunal, is a defect, not of form, but of substance. *Rex* v. *Great Bedwin, Burr. Sett. Cas.* 163; *S. C.* 2 *Str.* 1158; *King* v. *Chilverscoton*, 8 *T. R.* 178; *Vernon* v. *Wantage, Penn.* 311.

Under the English statute (13 and 14 *Car.* 2, *c.* 12, § 1), it has been uniformly held, that it must appear upon the face of the order of the removal, that it was made upon the complaint of the church wardens or overseers of the poor that there was a complaint and an adjudication that the person removed was likely to become chargeable to the parish, and an adjudication of the place of legal settlement. *Rex* v. *Great Bedwin, Burr. Sett. Cas.* 163; *Weston Rivers* v. *St. Peters*, 2 *Salk.* 492; *Chittinston* v. *Penhurst*, 2 *Salk.* 473, 475; *Rex* v. *Usculm, Burr. Sett. Cas.* 138; *Rex* v. *Netherton, Ib.* 139; *St. Giles, Cripplegate* v. *Hackney*, 2 *Salk.* 478.

Substantially the same provisions are contained in our act of 1774, and the same principles must govern its construction.

If there were no authority whatever upon this subject, and

the question were to be decided without the light of adjudicated cases, there would seem to be no room for doubt as to the true principle by which the decision must be governed. The statute confers the power of removing by compulsion any person who has not acquired a legal settlement in the township where he resides, from that township to the place of his legal settlement. Such an extraordinary control over the personal liberty of the citizen should never be exercised, except under legal guards and cautious restrictions. Accordingly the statute has, with great wisdom, provided that such removal can only be made upon the application of the overseer of the poor, informing that he has reason to believe that the person has not acquired a legal settlement in the township, and that he is likely to become chargeable, and by virtue of an order of two justices, after an examination of the individual sought to be removed; and upon an adjudication by the justices, that the information given them is true, *viz.* that the individual has not acquired a legal settlement in the township where he resides, and that he is likely there to become chargeable. If the compulsory power of removing a citizen from his chosen place of residence be exercised by any other persons, or under any other circumstances than those specially designated in the statute, such act ought, upon the most obvious principles, to be treated as illegal and invalid. It is equally clear that the persons claiming to exercise such powers should manifest their authority upon the face of their proceedings, and that those whose rights are affected by such exercise of authority should be in no wise prejudiced by an omission to disclose the foundation for such exercise of power.

By our ancient law, this was the only mode of removing a person to the place of his legal settlement, except in the case of persons residing in one township, under a certificate of legal settlement elsewhere. In such case no adjudication was necessary. The certificate was deemed plenary evidence of the place of legal settlement, and the person might be removed thither, upon his actually becoming chargeable or asking relief, by the mere action of the overseers of the poor. *Rev. Laws* 38, § 7; *Rev. Stat.* 881, § 7.

The act of 1820 (*Rev. Laws* 764, § 4,) applies only to cases where the person sought to be removed has actually applied to the overseer for relief. No proceedings under it can be instituted at the mere instance of the overseer of the poor to protect the township from an apprehended liability, on the ground that the person sought to be removed is likely to become chargeable. The person himself must lay the foundation for the proceeding by an application for relief. If he do not choose to apply for relief, no matter where his settlement may be, nor how urgent the necessity for public relief, the officers cannot, upon their own motion, interfere with his liberty or change his place of residence.

If, then, these proceedings were instituted under the act of 1774, the order of removal is illegal, because there is no adjudication that the *pauper was likely to become chargeable.* If they were instituted under the act of 1820, the order is equally defective, because it does not appear that the *person sought to be removed made application to the overseer for relief.* In either case, the radical defect of the order is, that it does not appear that the persons making it had legal authority to act in the premises. This clearly is a defect, not of form but of substance, and is not amendable by the sessions.

What has been said is founded upon the law, as it stood prior to the recent revision. It is insisted, however, that, by the act of 1846, the law was essentially altered, and that, under the provisions of that act, the order of removal made in this cause is valid. The provisions of the fourth section of the act of 1820 are embodied, without material alteration, in the 27th section of the act of 1846. If these proceedings were instituted, as it is insisted they were, under that section, the remarks which have already been made touching the act of 1820 apply in their full force. The order is illegal, because it does not appear that the person removed had ever applied to the overseer for relief.

The provisions of the 23d section of the act of 1774, which regulated the proceedings upon application for the removal of persons *likely to become chargeable,* has undergone very essential alterations. That section was reported by the revisors

without amendment, as the 17th section of the revised act.    It appears by the Senate Journal (page 468), that the 17th section was amended while upon its second reading before that body.    By the engrossed bill, it appears to have finally passed both houses in the shape in which it was amended, and en·· grossed in the senate.    The original section, as it stood in the act of 1774, was designed, as has been said, to effect the removal, at the instance of the overseers of the poor, of a person *likely to become chargeable,* from the township which he has obtained no settlement, to the place of *his legal settlement.* The section, as it now stands, provides for the removal of a person who is either *likely to become chargeable,* or who has *actually applied for relief,* not to the place of his *legal settlement,* but to his *place of residence for six months preceding such application* or examination; and the township in which he has resided for six months is made liable as the place of his legal settlement.    And if it shall appear that he has not resided in any township within this state for six months, the township in which he resides at the time of such application shall be deemed and taken as his place of settlement. The amendment, it will be perceived, has not only provided a new mode of acquiring a legal settlement, but has entirely altered the law in regard to removals.    The justices have no authority, under this section, to inquire or adjudicate respecting the legal settlement of the pauper, but simply as to his residence in any one township for six months.    It seems highly probable, from the whole frame of the section as it now stands, that the legislature designed, by the amendment, to provide for the case of a person who had no legal settlement any where in this state.    It has been suggested, with much apparent probability, that it was supposed that the original section, previous to the amendment, was designed to meet that case, and the phraseology of the first clause of the section certainly favors such construction.    But a different construction has always been put upon the section, as it stood in the act of 1774. It has uniformly been held to provide for the removal of a person from a township where he has acquired no settlement to the place of his last legal settlement within this state.    Such

is the clear and express provision of the 5th section of the act of 1740, (1 *Neville* 258) from which the 23d section of the act of 1774 was obviously derived. Such was the undoubted intention of the legislature of 1774, as indicated by the entire frame of that act. Its whole policy is to define what constitutes a legal settlement, and to provide for the adjudication of that question, and for removals accordingly. It does not deal with the case of a person having no legal settlement within the state, in order to his removal, except as a vagrant. Such a case is without the provisions and the policy of the act.

In fact all the removals of persons to the places of their legal settlement, made in New Jersey between 1774 and 1820, were made by virtue of that section. All the decisions of our courts upon questions of legal settlements were founded upon proceedings instituted under that section. It is obvious that the amendment made by the act of 1846, has effected an important change in the law, as it had existed for more than a century. It is not designed to intimate any opinion upon the wisdom or expediency of that alteration, or upon the true construction of the existing statute. Whatever construction is adopted, it is obvious that there is now in this state no authority whatever for sending a person who is likely to become chargeable to the place of his legal settlement, on the application of the overseers of the poor. If the 17th section of the existing law should be construed, as its language hitherto uniformly has been, to apply to cases where the person has a legal settlement in this state, still there can be no inquiry or adjudication as to his legal settlement, for, by the express terms of the statute, the inquiry and adjudication must be as to his residence for six months preceding the application ; nor can he be sent to his place of legal settlement, unless he shall have resided there six months previous to the application, for, by the express enactment of the statute, *that* is to be deemed his place of legal settlement. If, on the other hand, the 17th section should be construed to apply only to cases where the person to be removed has no legal settlement in this state, then there is no provision whatever in the law for the removal of a person having a legal settlement in the state, and

who is likely to become chargeable to another township. He can neither be sent to his legal settlement nor to the township where he may have resided for six months previous to the examination.

It is unnecessary now to decide which of these constructions is the true one. It is enough to say that, whichever construction is adopted, it will not aid the plaintiff's case. In either event, if the proceedings were instituted under this section of the law, the order of removal is clearly illegal.

The order of the sessions, quashing the order of removal, must be affirmed, with costs.

CARPENTER, J. The 23d section of the act of 1774, for the settlement of the poor (*Rev. Laws* 44) authorized two justices of the peace, upon complaint of the overseer or overseers of the poor, to make an order for the removal of any poor person that is, or is likely to become, chargeable to a township in which he had not obtained a legal settlement. This section was copied from the statute of 13 and 14 *Car.* 2; and it has always been held, both under the English statute and our own act, that the power of the justices to act arises only upon the application of the overseer or overseers. It has always been held that, as the power of the justices is special and limited, their order must pursue the statute, and show the complaint. There must, also, be an adjudication, either expressly or by reference to the complaint, that the pauper is chargeable, or likely to become chargeable, to the township.

In the revision of our statute laws in 1846, (*Rev. Stat.* 886, § 17,) this section has been singularly changed in some of its provisions, particularly in regard to the order which the justices are authorized and required to make; but the section still remains substantially the same, so far as regards the questions raised by the counsel in this case. Under the 17th section of the act of 1846, (in which the 23d section of the former act is incorporated) the overseers are bound to apply to the justices for an order of removal, not only when they believe the person likely to become chargeable, but also upon application for relief by or in behalf of such poor person; yet still,

in the latter instance, only "in such case :" that is, in the case of a poor person not having a legal settlement in the township, and chargeable, or likely to become chargeable, to the same. The probability of his becoming chargeable is sufficiently shown by his application for relief. The addition to the section thus referred, then, adds nothing to the power of the justices : it gives them no authority to act on their own motion. They can still only act in a proper case upon the application of the overseers, and which must appear on the face of their order. The orders are clearly defective in both particulars, and were properly quashed by the sessions upon the appeal.

An offer, however, was made to prove that the complaint was made by the overseers, and that the paupers were likely to become chargeable. It does not avail. The sessions, on the appeal, could not confirm the orders below, if those orders were defective in substance. An order of confirmation must pursue the original order, and if that be erroneous (in matter of substance not admitting of amendment) the latter will fall to the ground. 18 *Vin.* 469, *pl.* 4 ; *Com. Dig.* "*Justices*" (*B.* 73) ; 2 *Salk.* 482 ; *Ib.* 608 ; *Ib.* 493.

The 21st section of the act of 1846, *Rev. Stat.* 888, (27th of the former act) also copied from the English statute 13 and 14 *Car.* 2, enacts that all defects of form in orders of removal shall be amended ; and if not amended in the sessions on the appeal, the Supreme Court shall amend such original orders, after being removed there. The inadvertence of the justices in not affixing their seals, as a defect in form merely, may perhaps, under this section; be considered as amended. But it has always been held that an order cannot be amended in matters of substance which require an examination, and, more particularly, which lie at the foundation of the jurisdiction of the justices. It was decided under the English statute, as long ago as 14 *Geo.* 2, and has since been held as settled law, that the sessions cannot amend orders by adding new averments. Thus the defect, that an order does not state that it was made upon the complaint of the overseers, cannot be amended. *Rex* v. *Inhab. of Great Bedwin*, 2 *Str.* 1158 ; *Burr. Sett. Cas.* 163, *S. C. ;* Ld. Kenyon, in *Rex* v. *Inhab. of Chilverscot-*

*ton,* 8 *T. R.* 178.    See 2 *Har. Dig. tit. "Poor"* 5375–6, (*ed.* 1846) and cases.

I concur in affirming the orders of the sessions, quashing the orders of the justices below.

CITED *in Overs. Bethlehem* v. *Overs. Franklin,* 2 *Dutch.* 211; *Overs. New Barbadoes* v. *Overs. Paterson,* 3 *Dutch.* 545; *State* v. *Overs. So. Amboy,* 3 *Vr.* 284.